# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SOCIEDAD CONCESIONARIA | ) | 3:24-CV-02043 (SVN) |
| METROPOLITANA DU SALUD S.A., | ) | |
| *Petitioner*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WEBUILD S.P.A., | ) | January 12, 2026 |
| *Respondent*. | ) | |

## RULING AND ORDER ON RESPONDENT'S MOTION TO DISMISS

Sarala V. Nagala, United States District Judge.

Petitioner Sociedad Concesionaria Metropolitana Du Salud S.A. ("SCMS"), a Chilean construction company, brings this action against Italian construction company Webuild S.P.A. ("Webuild"), seeking confirmation of its foreign arbitration award pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitration Awards of June 10, 1958 (the "New York Convention"), as codified under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201, *et seq.* Petitioner alleges that Webuild, as successor in interest to Astaldi S.p.A. ("Astaldi"), has assumed liability for the award following Astaldi's Concordato, a Chapter 11-equivalent restructuring proceeding, in Italy.

In connection with an earlier motion by Webuild to deem this action an ordinary civil proceeding instead of a petition to confirm an arbitration award, the Court ordered bifurcated briefing, with initial briefing focused on jurisdictional issues and secondary briefing on the merits, if necessary. Order, ECF No. 46. Webuild has now moved to dismiss the action for lack of personal jurisdiction and, in the alternative, *forum non conveniens*. Because the Court lacks personal jurisdiction over Webuild under Connecticut's relevant long-arm statute and, in any

event, *forum non conveniens* dictates the action should proceed elsewhere, the Court grants Webuild's motion to dismiss in full.

## I.    FACTUAL BACKGROUND

### A.  The Hospital Construction Project and Arbitration

Petitioner SCMS is a Chilean company involved in the "construction and administrations of public works concessions."  Pet., ECF No. 1 ¶ 9.  Respondent Webuild is a "multinational construction company," incorporated with its principal place of business in Italy.  *Id.* ¶ 10; Decl. of Maria Irene Perruccio, ECF No. 59 ¶ 3.  Webuild is registered to do business in the state of Connecticut.  Pet. ¶ 10.  It has designated a registered agent at 90 Fieldstone Court, Cheshire, Connecticut.  *Id.*

This controversy arises out of a hospital construction project in Chile.  In February 2014, the Chilean government awarded a concession to Astaldi,[1] an Italian construction company, and contracted with it to design, construct, and operate the Félix Bulnes Hospital in Santiago, Chile.  *Id.* ¶ 41.  Astaldi then formed the petitioner, SCMS, as a standalone entity and assigned it the concession contract.  *Id.*

SCMS, in turn, hired Astaldi's Chilean branch to complete most of the construction work for the hospital.  *Id.*  This arrangement was formalized in July 2015, when SCMS and Astaldi signed an Engineering, Construction, and Execution of Services Contract for the Public Fiscal Work of the Félix Bulnes Hospital ("the EPC Contract").  *Id.*  Under that contract, Astaldi "assumed SCMS's design and construction obligations . . . including the obligation to coordinate

---

[1] SCMS uses the term "Astaldi" to refer both to the Italian construction contractor Astaldi S.p.A. and its Chilean branch Astaldi Chile, and notes that under Italian and Chilean law, Astaldi Chile is not a separate legal entity, but rather is akin to operating under a different name or "doing business as" in the United States.  *See* Pet. at 1 n.1.  The distinctions between different Astaldi branches are not material to this ruling, so the Court will adopt SCMS's naming convention without assessing its legal accuracy.

work performed by subcontractors, acquire necessary permits, acquire all necessary goods and services, and assume the costs of the work and services necessary" to complete the project by January 31, 2019. *Id.* ¶ 42. The EPC Contract provided that all disputes would be resolved via binding arbitration before the Santiago Center for Arbitration and Mediation. *Id.* ¶¶ 48–49.

Trouble began to arise in September 2018, when Astaldi told SCMS that it had begun bankruptcy and restructuring proceedings in Italy. *Id.* ¶ 43. Thereafter, the pace of construction slowed, and SCMS incurred more expenses in an attempt to keep the project on track, such as paying subcontractors on Astaldi's behalf. *Id.* ¶¶ 44–45. After Astaldi and SCMS were unable to resolve their differences, SCMS notified Astaldi of its intention to terminate the EPC Contract. *Id.* ¶ 47.

Astaldi Chile and SCMS initiated arbitration proceedings against each other in Chile in January 2019. *Id.* ¶¶ 48, 50. These parallel cases were then "joined for the purposes of administration and judgment" and dealt with as one arbitration ("the Arbitration"), in which Chilean law governed. *Id.* ¶¶ 50–51. After considering documentary evidence and testimony from both sides, examining witnesses, and touring the construction site, the arbitrator granted an award in favor of SCMS; that award was later challenged on appeal. *Id.* ¶¶ 54–55, 58–63. According to SCMS, as of November 29, 2024, it is owed a total of $146,521,235.32. *Id.* ¶ 67.

B. The Reorganization

Meanwhile, Astaldi underwent a reorganization through its Italian restructuring proceedings. *Id.* ¶ 76. It is the consequences of this reorganization process—not the hospital project itself or the Arbitration—that is the source of the present dispute between SCMS and Webuild. *See* Mem. Supp. Mot. Deem Proc. Ordinary Civ. Action, ECF No. 27 ("Resp't's Brief"), at 12. Both parties agree that some sort of corporate transaction occurred in the Italian restructuring that led to the creation of Webuild, but they disagree as to Webuild's liability for the

arbitration award.  SCMS, for its part, alleges that Webuild is liable for the arbitration award as the successor to Astaldi.  Pet. ¶ 76.  Webuild disagrees, contending that a Demerger Agreement entered into during the Italian restructuring proceedings provides that it is not, in fact, liable for this particular debt.  Reply in Further Supp. Resp't's Brief, ECF No. 36 ("Resp't's Reply"), at 8. For purposes of this procedural ruling, the Court need not delve deeper into the exact contours of the disagreement.

    C.  <u>Procedural History</u>

    Connecticut is not the first jurisdiction where SCMS has sought to enforce the arbitral award.  In Ontario, Canada, SCMS filed an action similar to this one that was stayed in August of 2024 on grounds of *forum non conveniens* pending resolution of litigation in Italy, which is set to determine whether Webuild is liable for Astaldi's debts related to the arbitration award under Italian bankruptcy law (the "Italian Action").  Decl. of Andreas A. Frischknecht, ECF No. 37-1, at 2–12.  And in a second action SCMS filed in Québec, Canada, SCMS itself chose to stay proceedings after "service by Webuild of motions challenging jurisdiction and based on *forum non conveniens*."  Resp't's Reply at 5 n.4.  Then, in 2024, SCMS pursued an action similar to this one in the District of Delaware, which the court there ultimately dismissed for lack of personal jurisdiction over Webuild.  *See Sociedad Concesionaria Metropolitana de Salud S.A. v. Webuild S.p.A*, No. 23-CV-1175 (CFC), 2024 WL 4333144, at *2 (D. Del. Sept. 27, 2024).

    In March of 2024, Webuild filed the Italian Action against SCMS and Astaldi[2] in the Court of Rome seeking "an authoritative determination" (i) that Webuild, as Astaldi's successor, did not assume Astaldi's debts to SCMS under the Demerger Agreement, and (ii) that the arbitration award at issue here is not enforceable against Webuild.  Padovan Decl. ¶ 28; *see also id.*, Ex. H, Deed of

---

[2] Astaldi is now known as Astaris S.p.A.  *See* Decl. of Marco Padovan, ECF No. 60 ¶ 5.  For clarity, the Court will refer to the company as Astaldi throughout its ruling.

Summons, ECF No. 60–8 at 1–49. Astaldi was initially served in the Italian Action via certified email in April of 2024; given the "complexities" of the service process with respect to SCMS, however, Webuild has not yet successfully served SCMS with notice in the Italian Action. Padovan Decl. ¶¶ 30–34. Webuild asserts that SCMS could, "if it wished . . . validly appear before the Court of Rome without objecting to its jurisdiction." *Id.* ¶ 36. SCMS, for its part, contends that Webuild "has made no meaningful attempt to serve notice." SCMS Opp'n to Mot. to Dismiss ("SCMS Opp'n"), ECF No. 63 at 45. A hearing on the merits in the Italian Action is set for April of 2026. Padovan Decl. ¶ 34.

SCMS has now commenced the present proceedings in Connecticut to enforce its arbitration award against Webuild. Pet., ECF No. 1. Webuild initially moved the Court to convert SCMS's petition into an ordinary civil action. Mot. to Deem, ECF No. 26. Following a hearing on the pending motion to confirm the arbitration award and with the consent of the parties, the Court bifurcated the proceedings into an initial round of procedural briefing regarding jurisdiction, and a second round—if necessary—on the merits of the parties' claims. *See* Order, ECF No. 46. Webuild then filed a motion to dismiss for lack of personal jurisdiction and on *forum non conveniens* grounds, along with four affidavits in support. *See* Mot. to Dismiss, ECF No. 57, ECF Nos. 58–61. SCMS opposes the motion. ECF No. 62–63.

## II.    PERSONAL JURISDICTION

### A.  Legal Standard

On a motion to dismiss for lack of personal jurisdiction made under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of showing that the court has jurisdiction over

the defendant. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).[3]

"[T]he showing a plaintiff must make to defeat a defendant's claim that the court lacks personal

jurisdiction over it 'varies depending on the procedural posture of the litigation.'" *Dorchester Fin.*

*Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (*per curiam*) (quoting *Ball v.*

*Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).  While the plaintiff has

the "ultimate burden of establishing jurisdiction" over the defendant "by a preponderance of the

evidence, until an evidentiary hearing is held," the plaintiff "need make only a *prima facie* showing

by its pleadings and affidavits that jurisdiction exists." *CutCo Indus., Inc. v. Naughton*, 806 F.2d

361, 365 (2d Cir. 1986) (internal citation omitted).  The pleadings and affidavits are construed in

the light most favorable to the plaintiff and "all doubts are resolved in its favor." *Id.*

Importantly, however, the plaintiff may not rely on "conclusory statements without any

supporting facts, as such allegations would 'lack the factual specificity necessary to confer

jurisdiction.'" *Mazloum v. Int'l Com. Corp.*, 829 F. Supp. 2d 223, 227 (S.D.N.Y. 2011) (quoting

*Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998)).  Nor is the Court "bound to

accept as true a legal conclusion couched as a factual allegation." *Jazini*, 148 F.3d at 185

(quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Finally, while the Court construes all

pleadings and affidavits in the light most favorable to the plaintiff, it must not "draw argumentative

inferences in the plaintiff's favor." *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659,

673 (2d Cir. 2013) (quoting *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 507 (2d Cir.

1994)).

---

[3] Although the cases cited in this section discuss typical civil actions where the parties are postured as plaintiffs and
defendants, the parties have not argued that their positions as petitioner and respondent here affect the applicable legal
standard.

In deciding a pretrial motion to dismiss for lack of personal jurisdiction, "a district court has considerable procedural leeway." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981). It can "determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Id.* And even if the plaintiff has not made a *prima facie* showing of personal jurisdiction, the Court can order discovery, in its discretion, if it concludes the plaintiff "may be able to establish jurisdiction if given the opportunity to develop a full factual record." *Leon v. Shmukler*, 992 F. Supp. 2d 179, 194 (E.D.N.Y. 2014).

B. <u>Discussion</u>

The Court concludes that it lacks personal jurisdiction over Webuild under Connecticut's long-arm statute; Webuild has not consented to jurisdiction by registering to do business in Connecticut. And because the Court grants Webuild's motion to dismiss on *forum non conveniens* grounds for the reasons below, the Court does not reach the question of whether establishing personal jurisdiction pursuant to Rule 4(k)(2) here would be inconsistent with the United States Constitution and laws under Second Circuit precedent.

To determine personal jurisdiction over a foreign entity in a case involving a federal question, the Court engages in a two-part analysis. *See Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 243–44 (2d Cir. 2007). First, the Court must apply the forum state's long-arm statute, and second—if the long-arm statute permits personal jurisdiction over the foreign defendant—the Court must analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution. *See Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163–64 (2d Cir. 2010).

*1.  Connecticut's Corporate Long-Arm Statute*

First, the Court concludes that Webuild has not consented to jurisdiction in Connecticut by registering to do business in the state.

Courts may exercise two types of personal jurisdiction over a corporate defendant properly served with process:  specific (also called 'case-linked') jurisdiction and general (or 'all purpose') jurisdiction.  "Specific jurisdiction is available when the cause of action sued upon arises out of the defendant's activities in a state.  General jurisdiction, in contrast, permits a court to adjudicate any cause of action against the corporate defendant, wherever arising, and whoever the plaintiff." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016).  SCMS seeks to invoke only general jurisdiction over Webuild in this action.  *See* SCMS Opp'n at 16.

In Connecticut, personal jurisdiction may be created through consent or waiver, *U.S. Trust Co. v. Bohart*, 197 Conn. 34, 39 (1985).  The applicable state long-arm statute is Connecticut General Statutes § 33-926(a), which provides, in relevant part, that "[e]ach foreign corporation authorized to transact business in this state shall continuously maintain in this state:  (1) A registered office that may be the same as any of its places of business; and (2) a registered agent at such registered office[.]"  And Connecticut General Statutes § 33-929 provides that "[t]he registered agent of a foreign corporation authorized to transact business in this state is the corporation's agent for service of process, notice or demand required or permitted to be served on the foreign corporation."  It is undisputed that Webuild is registered to transact business in Connecticut and that it maintains a registered agent within the state for service of process.  These actions, SCMS contends, mean Webuild has consented to general jurisdiction within the state.

While the Connecticut Supreme Court has not opined on whether § 33-926 has jurisdictional consequences for foreign corporations, SCMS urges this Court to look to a decision of the Connecticut Appellate Court interpreting the statute.  In *Talenti v. Morgan & Brother*

*Manhattan Storage Co.*, 113 Conn. App. 845 (2009), *cert. denied*, 292 Conn. 908 (2009), the

Connecticut Appellate Court held:

> [W]hen a foreign corporation ... obtain[s] a certificate of authority and ... authoriz[es] a public official to accept service of process, it has consented to the exercise of jurisdiction over it by the courts of this state. 'This consent is effective even though no other basis exists for the exercise of jurisdiction over the corporation.' 'Such a corporation has purposely availed itself of the privilege of conducting activities within this state, thus invoking the benefits and protections of its laws' . . . Therefore, the defendant has voluntarily consented to the personal jurisdiction of it by the courts of this state.

*Id.* at 855–56 (quoting *Wallenta v. Avis Rent a Car System, Inc.*, 10 Conn. App. 201, 207–

08 (1987) (cleaned up)).  The court further held that, because the defendant had "consented to

jurisdiction" under § 33-926, "the exercise of jurisdiction by the court does not violate due

process." *Id.* at 856 n.14.

But in 2016, the Second Circuit cast serious doubt on *Talenti*'s holding, while addressing

the exact question at issue here—whether registration and maintenance of an agent for service of

process by a foreign corporation under Connecticut's registration and agent-appointment statutes

meant the corporation had consented to general jurisdiction in Connecticut.  *See Brown*, 814 F.3d

at 635–37.  In *Brown*, the Second Circuit analyzed the language of § 33-926 and concluded that

there was "no basis on which the corporation should have understood that, by registering and

appointing an agent, it could be haled into Connecticut court on non-Connecticut based actions."

*Id.* at 637.  *Brown* further discussed the U.S. Supreme Court's 1917 decision in *Pennsylvania Fire*

*Ins. Co. of Philadelphia v. Gold Issue Mining & Milling Co.*, 243 U.S. 93 (1917), which found that

the Missouri Supreme Court's decision interpreting a similar registration statute as conferring

general jurisdiction on a foreign corporation did not violate due process.  *Penn. Fire Ins. Co. of*

*Philadelphia*, 243 U.S. at 95–96.  *Brown* noted that *Pennsylvania Fire* had been undercut by the

U.S. Supreme Court's subsequent general jurisdiction cases, "foreclos[ing] such an easy use" of *Pennsylvania Fire* to dictate that the Connecticut statute should be similarly interpreted. *Brown*, 814 F.3d at 638–39.

The thicket of case law does not end there, however.  In 2023, the U.S. Supreme Court decided *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122 (2023), which addressed whether "the Due Process Clause of the Fourteenth Amendment prohibits a State from requiring an out-of-state corporation to consent to personal jurisdiction to do business there."  *Mallory*, 600 U.S. at 127. Justice Gorsuch, writing for the majority, upheld *Pennsylvania Fire* as good law and found that it "controls" in cases like *Mallory* where the state registration statute explicitly "permit[s] state courts to 'exercise general personal jurisdiction' over a registered foreign corporation, just as they can over domestic corporations."  *Id.* at 134 (quoting 42 Pa. Cons. Stat. § 5301(a)(2)(i)).  The majority explicitly declined to "speculate whether any other statutory scheme and set of facts would suffice to establish consent to suit."  *Id.* at 135.

The Court now rejects SCMS's invitation to hold that *Mallory* "negates" the Second Circuit's ruling in *Brown*, insofar as *Brown* "relied on an incorrect interpretation" of *Pennsylvania Fire*.  SCMS Opp'n at 18.  *Brown* interpreted the very Connecticut statute at issue here, which is silent on the issue of the jurisdictional consequences of registering to do business and maintaining an agent for service of process in the state.  By contrast, *Mallory* concerned a Pennsylvania statute that explicitly *conferred* general jurisdiction on foreign corporations registered to conduct business in the state.  And although *Mallory* confirmed that *Pennsylvania Fire* has not been overruled, at no point in *Brown* did the Second Circuit invalidate or deem *Pennsylvania Fire* abrogated.  At most, *Brown* recognized that *Pennsylvania Fire*, in light of more recent Supreme Court precedent, was "simply too much at odds with the approach to general jurisdiction adopted in *Daimler [AG*

*v. Bauman*, 571 U.S. 117 (2014)] to govern as categorically as [the plaintiff] suggest[ed]."  814 F.3d at 638.  *Mallory* itself recognized this same issue.  *See Mallory*, 600 U.S. 122 at 137–38 (recognizing that *Pennsylvania Fire* sat "comfortably side by side" with *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny, with the former governing in situations where an out-of-state corporation "*has* consented to in-state suits in order to do business in the forum," and the latter providing "an *additional* road to jurisdiction over out-of-state corporations," where that corporation "*has not* consented to in-state suits").

Importantly, too, in *Pennsylvania Fire*, the Missouri Supreme Court had previously concluded that the company had consented to personal jurisdiction when it designated the state insurance department to accept service on its behalf.  *Penn. Fire Ins. Co. of Philadelphia*, 243 U.S. at 95.  The Connecticut Supreme Court has not interpreted Conn. Gen. Stat. § 33-926 similarly, and *Brown* suggests that it would not do so.[4]  For these reasons, *Brown* remains good law and is binding on this Court.  *See Lopez v. Clear Blue Spec. Ins. Co*., No. 3:24-CV-1068 (OAW), 2024 WL 4692287, at *3 n.3 (D. Conn. Nov. 6, 2024) (recognizing same).[5]  As a result, the Court concludes that Webuild has not consented to this Court's general personal jurisdiction merely by its compliance with Conn. Gen. Stat. § 33-926.

---

[4] The Second Circuit noted that the Connecticut Supreme Court's denial of certiorari in *Talenti* does not carry any interpretative weight as "'it is well established that the denial of a petition for certification to appeal does not signify that [the Connecticut Supreme Court] approves of or affirms the decision or judgment of the Appellate Court.'"  *Brown*, 814 F.3d at 635 n. 14 (quoting *Hylton v. Gunter,* 313 Conn. 472, 477 n. 5 (2014)).

[5] By contrast, neither *Talenti* nor the state court rulings that follow it are binding on this Court.  Even if this Court were to disagree with *Brown*—which it does not—this Court is "bound to follow federal authorities" where there exists a divergence between state and federal authorities on the point.  *Lopez*, 2024 WL 4692287, at *3 n.3.  Thus, SCMS's argument that this Court should follow Connecticut intermediate state court precedent and find that Webuild consented to this Court's general personal jurisdiction by naming an agent for service of process in Connecticut also fails.

### 2. *Due Process*

As satisfaction of a state long-arm statute is a prerequisite to the exercise of personal jurisdiction and the Court has held that SCMS has not met this requirement, the Court does not proceed with analyzing SCMS's alternative argument that Webuild is effectively "at home" in Connecticut by virtue of its business operations here, such that exercising personal jurisdiction over it would be consistent with due process.  *See Chloe*, 616 F.3d at 164; *see also Preferred Display, Inc. v. Vincent Longo, Inc.*, 642 F. Supp. 2d 98, 104 n.7 (D. Conn. 2009) ("[b]ecause the court concludes that Connecticut's long arm statute does not reach [defendant], the court need not determine whether a finding of jurisdiction would comport with constitutional due process requirements); *Anderson Trucking Serv., Inc. v. Eagle Underwriting Grp, Inc.*, No. 3:17-CV-00817 (CSH), 2018 WL 4039326, at *13 n.5 (D. Conn. Aug. 23, 2018) ("[b]ecause I find that [plaintiff] cannot avail itself of Conn. Gen. Stat. § 33-929(f) as the means of obtaining personal jurisdiction over Defendants, I do not proceed to the due process analysis").

### 3. *Rule 4(k)(2)*

Next, the Court defers ruling on SCMS's argument that it can exercise personal jurisdiction over Webuild pursuant to Federal Rule of Civil Procedure 4(k)(2), given its decision below to dismiss on *forum non conveniens* grounds.

Rule 4(k)(2) provides:

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Fed. R. Civ. P. 4(k)(2).  Under this provision, "a defendant sued under federal law may be subject to jurisdiction based on its contacts with the United States as a whole, when the defendant is not

subject to personal jurisdiction in any state." *Dardana Ltd. v. Yuganskneftegaz*, 317 F.3d 202, 207 (2d Cir. 2003).  Webuild concedes that it is not subject to jurisdiction in any state's courts, *see* Mot. to Dismiss at 26, so the Court would next analyze whether exercising jurisdiction over it is consistent with the Constitution and federal laws—specifically, the Due Process Clause of the Fifth Amendment.  *Dardana Ltd.*, 317 F.3d at 207.

Until recently, it was an "open [] question whether the Fifth Amendment imposes the same restrictions [as the Fourteenth Amendment] on the exercise of personal jurisdiction by a federal court." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 269 (2017).  Under the Fourteenth Amendment's due process analysis, the nonresident defendant generally must have "certain minimum contacts such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Walden v. Fiore*, 571 U.S. 277, 283 (2014). (cleaned up) (quoting *Int'l Shoe Co.*, 326 U.S. at 316).  The Fourteenth Amendment due process "analysis has two related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." *Chloe*, 616 F.3d at 164.  When general jurisdiction is invoked, "'courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and systematic general business contacts.'" *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018) (quoting *Met. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996)); *see also Goodyear Dunlop Tire Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) ("A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State.").  *Daimler* further refined this principle by holding that the paradigm locations where a corporation was "at

home" were its "place of incorporation and principal place of business[.]" *Daimler*, 571 U.S. at 137.

But recently, in a case involving suits for damages caused by terrorist attacks where Congress specifically authorized federal jurisdiction over the Palestinian Authority ("PA") and Palestinian Liberation Organization ("PLO"), the Supreme Court "decline[d] to import the Fourteenth Amendment minimum contacts standard into the Fifth Amendment." *Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 16 (2025). The Supreme Courted noted that the "Due Process Clause of the Fifth Amendment necessarily permits a more flexible jurisdictional inquiry commensurate with the Federal Government's broader sovereign authority." *Id.* But *Fuld* declined to "delineate the outer bounds of the Federal Government's power, consistent with due process, to hale foreign defendants into U.S. courts." *Id.* at 18.

Since the Supreme Court's ruling in *Fuld*, the Second Circuit has not had opportunity to opine on the how the Fifth Amendment due process inquiry might differ from the Fourteenth Amendment's minimum contacts inquiry. To be sure, before *Fuld*, the Second Circuit had recognized an open question regarding the minimum contacts inquiry for general jurisdiction under Rule 4(k)(2)(B): whether such jurisdiction "must be determined pursuant to the 'essentially at home' inquiry [under *Daimler*] or the 'continuous and systematic' inquiry." *Lensky v. Turk Hava Yollari, A.O.*, No. 21-2657-cv, 2023 WL 6173334, at *3 (2d Cir. Sept. 22, 2023) (summary order) (citing *Porina v. Marward Shipping Co., Ltd.*, 521 F.3d 122, 128 (2d Cir. 2008)). It is unclear whether *Fuld* displaces these inquiries as the possible relevant ones for the Fifth Amendment analysis required here, since *Fuld* did not set forth a particular standard and, in any event, involved specific, rather than general, jurisdiction. *See Fuld*, 606 U.S. at 12 ("No one contends, however, that the PLO and PA are subject to general jurisdiction in the United States.").

Without controlling law governing what standard applies, the due process inquiry here becomes complicated.  While it is undisputed that Webuild is a foreign corporation with its headquarters and principal place of business in Italy, *see* Perruccio Decl., ¶ 3, SCMS contends that Webuild has sufficient contacts with the United States as a whole—particularly through its Connecticut-incorporated subsidiaries—to render Webuild subject to general personal jurisdiction here.  SCMS also argues, in the alternative, that Webuild's Connecticut subsidiaries are the alter ego of Webuild and thus general personal jurisdiction is appropriate on that basis.  Without delving deeply into the issue here, the Court believes that, at a minimum, SCMS has made a sufficient showing that jurisdictional discovery would otherwise be warranted on this issue.  *Universal Trading & Inv. Co., Inc. v. Credit Suisse (Guernsey) Ltd.*, 560 F. App'x 52, 55 (2d Cir. 2014) (summary order) ("The standard for awarding jurisdictional discovery is low . . .").

But because there is significant uncertainty about what test applies under the Fifth Amendment, and because the Court believes that dismissal of this action on *forum non conveniens* grounds is appropriate in any event, the Court proceeds to dismiss the action on that basis, without deciding the question of whether the exercise of personal jurisdiction is permissible under Rule 4(k)(2) or permitting jurisdictional discovery.  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 436 (2007) (if "personal jurisdiction is difficult to determine, and *forum non conveniens* considerations weigh heavily in favor of dismissal, the court properly takes the less burdensome course"); *see also Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 720 n.6 (2d Cir. 2013) ("[A] court may 'dispose of an action by a *forum non conveniens* dismissal, bypassing questions of . . . personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant.'" (quoting *Sinochem*, 549 U.S. at 432)); *Chirag v. MT Marida Marguerite Schiffahrts*, 983 F. Supp. 2d 188, 193 (D. Conn. 2013) (under *Sinochem*, "lower courts

need not permit discovery or expend valuable resources deciding threshold issues where the *forum non conveniens* analysis counsels dismissal").

## III. FORUM NON CONVENIENS

Webuild has moved in the alternative for dismissal of this action on *forum non conveniens* grounds, contending that the matter is better suited to adjudication in Italian courts.  The Court agrees.  Because Italy is a proper alternative forum for this action, and private and public factors weigh in favor of resolution in the Italian courts, the Court grants Webuild's motion to dismiss on *forum non conveniens* grounds.

*Forum non conveniens* permits a court to dismiss an action in its discretion, "even if the court is a permissible venue with proper jurisdiction over the claim."  *Carey v. Bayerische Hypo– Und Vereinsbank AG*, 370 F.3d 234, 237 (2d Cir. 2004) (citation omitted).  The Second Circuit has "established a three-step framework" for resolving a motion to dismiss on *forum non conveniens* grounds that requires:  "(1) determining the degree of deference to be afforded to the petitioner's choice of forum; (2) examining whether an adequate alternative forum exists; and (3) balancing the private and public factors enumerated by the Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)."  *Olin Holdings Ltd. v. State*, 73 F.4th 92, 109 (2d Cir. 2023).  Webuild has the burden of demonstrating that the "balance of private and public interest factors tilts heavily in favor of the alternative forum."  *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 189 (2d Cir. 2009).  The decision to dismiss a case on *forum non conveniens* grounds "lies wholly within the broad discretion of the district court[.]"  *Scottish Air Int'l Inc. v. British Caledonian Grp., PLC*, 81 F.3d 1224, 1232 (2d Cir. 1996).

### A. Petitioner's Choice of Forum

First, the Court concludes that SCMS's choice of forum does not carry the day.

In analyzing the first factor, courts "should begin with the assumption that the plaintiff's choice of forum will stand[.]"  *Iragorri v. United Technologies Corp.*, 274 F.3d 65, 71 (2d Cir. 2001).  But the degree of deference afforded to a plaintiff's choice of forum "moves on a sliding scale depending on several relevant considerations."  *Id.*  "[A] foreign resident's choice of a U.S. forum should receive less consideration," and even if it is not clear the foreign resident is forum shopping, "there is nonetheless little reason to assume [a U.S. forum] is convenient for a foreign plaintiff."  *Id.* at 71.  In other words, the "greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States," the more difficult it will be to justify dismissal on *forum non conveniens* grounds.  *Id.* at 72.

Here, as discussed above, the lawsuit is not well suited to this specific forum, or even the United States as a whole.  The arbitration award arose out of proceedings that took place in Chile, not the United States.  *See* Pet. ¶ 41.  Webuild's connection to the matter and its alleged liability for the arbitration award arose out of its purchase of Astaldi in Italian Chapter 11-esque restructuring proceedings, not out of any action that took place in—or as a result of—any events in Connecticut or even in the United States.  *Id* ¶ 43.  While Webuild has U.S. subsidiaries incorporated in Connecticut, there are no allegations that those subsidiaries had any involvement or connection to the underlying arbitration action.  And although the Court recognizes that SCMS seeks to enforce the arbitration award against assets Webuild may hold in the United States, the fact remains that this action bears little connection to the United States.  Thus, the Court finds that SCMS's choice of forum does not weigh heavily in favor of litigating the action here.

B.  Existence of an Adequate Alternative Forum

Likewise, on the second factor, it is clear that there exists an alternative appropriate forum for the issue of resolving Webuild's potential successor liability: the Italian courts.  "An alternative

forum is generally adequate if the [respondent] is amenable to process there and the forum permits litigation of the subject matter of the dispute." *Florian v. Danaher Corp.*, No. 3:00-CV-897 (CFD), 2001 WL 1504493, at *1 (D. Conn. Nov. 20, 2001) (citing *Cap. Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 609 (2d Cir.1998)).  Here, both criteria are satisfied.

Webuild is incorporated and has its principal place of business in Italy, and thus can be served with process there.  Further, Webuild has already commenced proceedings in Italy seeking "a declaration and judgment" that it is not liable for the arbitration award SCMS is attempting to collect.  *See* Padovan Decl. ¶¶ 28–30.  While SCMS protests that litigation in the Italian courts may "require the parties to embark on a round-trip," ultimately winding back up in U.S. courts, *see* SCMS Opp'n at 41, "[a] district court should not consider differences in remedy between forums unless 'the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all.'"  *Chirag*, 983 F. Supp. 2d at 196–97 (D. Conn. 2013) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981)).  While there certainly may be delay in being afforded a remedy by litigating in Italy, the remedy would not be so inadequate as to be equivalent to no remedy at all—as SCMS itself appears to acknowledge by contesting this factor on the basis of delay.  Thus, the second factor also weighs in favor of dismissal on *forum non conveniens* grounds.

C.  Public and Private Interest Factors

Finally, both the public and private interest factors identified in *Gulf Oil* weigh in favor of *forum non conveniens* dismissal.

To start, the public factors weigh in Webuild's favor here.  The public interest factors the Court must consider are: "(1) court congestion; (2) avoiding difficult problems in conflict of laws and the application of foreign law; (3) the unfairness of imposing jury duty on a community with no relation to the case; and (4) the interest of communities in having local disputes decided at

home." *Olin*, 73 F.4th at 109–10.  Of these factors, the Court weighs the second—involving the application of foreign law—most heavily here.  While the parties take different views of what the relevant corporate agreements and Italian restructuring proceedings mean, they appear to agree that whether Webuild is liable for the arbitration award requires an interpretation of those agreements and application of Italian law to the question of successor liability.  *See* Pet. ¶ 77 ("Webuild assumed liability for Astaldi [Chile]'s post-bankruptcy debts to SCMS in the [Demerger] Agreement" that was executed in Italy); *id.* ¶ 83 (under Italian law, "debtors remain liable for obligations arising out of continuing agreements . . . and liabilities arising from such agreements are considered to be post-bankruptcy obligations that are payable"); SCMS Opp'n at 44 ("[t]his Court, like any Italian court . . . can review the relevant agreements between Webuild and Astaldi to confirm the propriety of attaching Webuild's assets here").  While it is true that American federal courts are capable of interpreting foreign law, the Court believes that the rather complex questions of Italian law that will be presented in this action are best decided in an Italian forum.  Resolution of these issues would likely take longer in this Court, given its relative unfamiliarity with Italian law and the need for translations of documents originally written in Italian.  And while the Court recognizes that reluctance to apply foreign law alone does not justify dismissal, Italy has an interest in applying its own laws to the questions of Webuild's liability for the award at issue here.  *See Monegasque de Reassurances S.A.M. (Monde Re) v. Nak Naftogaz of Ukraine,* 158 F. Supp. 2d 377, 387 (S.D.N.Y. 2001) (recognizing that Ukraine had an interest in applying its own laws, while the American court "has an interest in avoiding the intricacies attendant to the application of Ukrainian law").

The other public interest factors, too, are either neutral or weigh in favor of *forum non conveniens* dismissal.  There is no evidence in the record to suggest that Italian courts are more

congested than this Court. And while an award confirmation proceeding would not be heard by a jury, there is an interest in having a dispute about the scope and meaning of agreements negotiated in an Italian bankruptcy pertaining to an Italian company—and Italian corporate law more generally—adjudicated in Italy. This action bears a much stronger connection to Italy than to Connecticut (or even the United States).

The private factors also support dismissal. These factors are: "(1) the relative ease of access to sources of proof; (2) the convenience of willing witnesses; (3) the availability of compulsory process for attaining the attendance of unwilling witnesses; and (4) the other practical problems that make trial easy, expeditious, and inexpensive." *Olin*, 73 F.4th at 109. To start, the Court recognizes that confirmation proceedings are summary in nature, and in the ordinary course may not require a significant amount of live witness testimony or record evidence. But the Court is convinced the successor liability issue that needs to be decided here is nuanced, and not as simple as SCMS makes it out to be. Where the arbitration agreement is silent as to whether a non-party to the award is properly the successor of the losing party in the arbitration, courts are hesitant to analyze the issue on the more lenient award confirmation posture, instead requiring a more exacting analysis. *See e.g.*, *Daebo Intern. Shipping Co., Ltd. v. Americas Bulk Transp. (BVI) Ltd.*, No. 12 Civ. 4750 (PAE), 2013 WL 2149591, at *5 (S.D.N.Y. May 17, 2013).

With respect to access to sources of proof, Webuild correctly contends that extrinsic evidence that may be required to decide the question of successor liability—including potential witnesses who may testify on the subject—are in Italy. Although the parties have already briefed some of these issues in the Delaware action, their filings there involve declarations from expert witnesses who are both based in Italy and presumably would be available to testify there. And while "advances in transportation and communication" have led courts to generally afford access

20

to sources of proof "less weight," the factor is nevertheless still considered and weighs against litigation here. *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 30 (2d Cir. 2002) (internal quotations omitted). Next, there is no suggestion that Italy would be unable to compel the attendance of witnesses with relevant information. And finally, the practical consideration of ensuring accurate translation of Italian documents into English, too, suggests that litigating in Italy on this issue of Italian law is the most appropriate course. As such, the private factors weigh in Webuild's favor.

For these reasons, the Court concludes that the balance of the relevant factors tilts heavily toward litigating the relevant issues in Italy and that dismissing this action on *forum non conveniens* grounds is appropriate.

## IV.    CONCLUSION

For the reasons described herein, Webuild's motion to dismiss is GRANTED. The Clerk is directed to enter judgment in favor of Webuild and to close this case.

**SO ORDERED** at Hartford, Connecticut, this 12th day of January, 2026.

  */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE

21